UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CLEOPHUS B.,

                        Plaintiff,

         v.

MARTIN O'MALLEY,[1] Commissioner of
  Social Security,

                        Defendant.

_____

**DECISION
and
ORDER**

**21-CV-1223F**
(**consent**)

APPEARANCES:          LAW OFFICES OF KENNETH HILLER, PLLC
                            Attorneys for Plaintiff
                            KENNETH R. HILLER,
                            IDA M. COMERFORD, and
                            JUSTIN DAVID JONES, of Counsel
                            6000 North Bailey Avenue
                            Suite 1A
                            Amherst, New York  14226

                            TRINI E. ROSS
                            UNITED STATES ATTORNEY
                            Attorney for Defendant
                            Federal Centre
                            138 Delaware Avenue
                            Buffalo, New York  14202
                                   and
                            JESSAMYN LYNETTE HANNA
                            Special Assistant United States Attorney, of Counsel
                            Social Security Administration
                            Office of General Counsel
                            6401 Security Boulevard
                            Baltimore, Maryland  21235

_____

[1] Martin O'Malley became the Acting Commissioner of the Social Security Administration on December 20, 2023, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On November 16, 2023, the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned in accordance with this court's June 29, 2018 Standing Order (Dkt. 16).  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on September 6, 2022 (Dkt. 10), and by Defendant on January 6, 2023 (Dkt. 11).

## BACKGROUND

Plaintiff Cleophus B. ("Plaintiff"), brings this action under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's applications ("applications") filed with the Social Security Administration ("SSA") on July 14, 2016, for Social Security Disability Benefits ("SSDI") under Title II of the Act, and Supplemental Security Income ("SSI") under Title XVI of the Act (together, "disability benefits").  Plaintiff alleges he became disabled on June 9, 2016, based on a back impairment, depression, bipolar disorder, diabetes, anxiety, schizophrenia, and auditory hallucinations.  AR[2] at 227-49, 266, 271.  Plaintiff's applications initially were denied on December 7, 2016.  AR at 149-164.

On December 12, 2016, Plaintiff requested an administrative hearing, AR at 165-66, which was granted with the administrative hearing held by telephone conference on August 8, 2018, before Administrative Law Judge ("ALJ") Michael Carr ("ALJ Carr"), located in Falls Church, Virginia ("the first hearing").  AR at 34-68. Appearing and testifying by telephone at the hearing were Plaintiff, represented by legal counsel

---

[2] References to "AR" are to the Bates-numbered pages of the Administrative Record electronically filed in two parts by Defendant on April 5, 2022 (Dkts. 6 and 7).

Christopher Grover, Esq., and impartial vocational expert ("VE") James Soldner.  On October 30, 2018, ALJ Carr issued a decision denying Plaintiff's claim, AR at 14-33 ("first ALJ decision"), which Plaintiff timely appealed to the Appeals Council ("administrative appeal").  AR at 224-26.  On September 16, 2019, the Appeals Council denied Plaintiff's request for review thereby rendering the first ALJ decision the Commissioner's final decision at that time on Plaintiff's disability benefits applications.

On November 14, 2019, Plaintiff commenced an action in this court seeking judicial review of the first ALJ decision, *Bates v. Comm'r of Soc. Sec.*, No. 19-CV-01538-FPG (W.D.N.Y.).  On June 5, 2020, the parties jointly stipulated to remand the matter to the Commissioner for further proceedings including a new administrative hearing.  *Id.*, Dkt. 11 (W.D.N.Y. June 5, 2020); AR at 967-68.  On August 29, 2020, the Appeals Council entered an order vacating the first ALJ decision and remanding the matter to an ALJ.  AR at 970-75 ("Appeals Council's Order").  The Appeals Council specifically directed the ALJ to (1) update the record as needed, including obtaining records from orthopedic surgeon Edward D. Simmons, M.D. ("Dr. Simmons"); (2) further evaluate Plaintiff's mental impairments and document application of the special psychiatric review technique described in 20 C.F.R. §§ 404.1520a and 416.920a; (3) further consider opinions of treating, non-treating, and non-examining sources and explain the weight given to such opinion evidence; (4) further consider Plaintiff's maximum residual functional capacity ("RFC") and provide appropriate rationale specifically referencing the record in support of the assessed limitations; and (5) if warranted, obtain supplemental evidence from a vocational expert to clarify the effect of

the assessed limitation on the number of jobs in the national economy that Plaintiff, despite his limitations, could perform.  *Id*. at 974.

Upon remand by the Appeals Council, the matter was assigned to ALJ Paul Georger ("ALJ Georger" or "the ALJ"), located in Buffalo, New York, before whom a second administrative hearing was held on May, 28, 2021, by telephone conference ("the second hearing" or "the administrative hearing").  AR at 906-40.  Appearing and testifying by telephone at the second hearing were Plaintiff, represented by legal counsel Amanda Weber, Esq., along with an impartial VE Yaskov Taitz, Ph.D. ("the VE").  On August 4, 2021, ALJ Georger issued a decision denying Plaintiff's claims, AR at 877-905 ("second ALJ decision"), which then became the Commissioner's final decision on Plaintiff's disability claims.

On November 16, 2021, Plaintiff commenced the instant action seeking review of the second ALJ decision denying Plaintiff disability benefits.  On September 6, 2022, Plaintiff moved for judgment on the pleadings (Dkt. 10 ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of the Plaintiff's Motion for Judgment on the Pleadings (Dkt. 10-1) ("Plaintiff's Memorandum").  On January 6, 2022, Defendant moved for judgment on the pleadings (Dkt. 11) ("Defendant's Motion"), attaching the Commissioner's Brief in Support of the Commissioner's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Rule 5.5 (Dkt. 11-1) ("Defendant's Memorandum").  On February 17, 202s, Plaintiff filed Plaintiff's Reply Brief to Defendant's Motion for Judgment on the Pleadings (Dkt. 15) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

## **FACTS**[3]

Plaintiff Cleophus B. ("Plaintiff"), born February 25, 1967, was 49 years as of his alleged disability onset date ("DOD") of June 9, 2016, and 54 years old as of August 4, 2021, the date of the second ALJ Decision.  AR at 239, 897.  Plaintiff attended school is special education classes though the 12th grade, but earned only an IEP diploma, has difficulty reading and writing, but eventually obtained a GED after repeatedly failing the GED test in 2916, 2017 and 2018.  AR at 272, 972-73, 913.  Plaintiff did not serve in the military, and has not completed any specialized training, trade, or vocational school.  AR at 272, 914.  Plaintiff has a driver's license, but does not drive based on his doctor's advice.  AR at 288, 913.  Plaintiff is not married, has four children and lives alone.  *Id*. at 497, 913.  Plaintiff past relevant work ("PRW") includes working as a dishwasher, assembly worker, and hand packer.  AR at 273, 934-35.  Plaintiff socializes with friends and family, watches movies and television, listens to the radio, enjoys coloring as a coping skill, and regularly attends church and a bible study class.  AR at 499, 925-26.

It is undisputed Plaintiff suffers from multiple physical and mental health impairments including degenerative disc disease of the lumbar spine, type II diabetes with peripheral neuropathy, schizoaffective disorder and bipolar disorder.  Plaintiff obtains primary care from Medical Care of Western New York where his primary care physician is Michael Calabrese, M.D. ("Dr. Calabrese").  AR at 481-92, 512-35, 548-59,

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings, and focuses on Plaintiff's mental health impairments because Plaintiff does not challenge the second ALJ decision with regard to his physical impairments.

607-14, 674-92, 766-72, 809-17, 820-30, 1628-33, 1643-49, 1897-2120. Plaintiff received assistance with scheduling medical appointments, medication management, peer support, financial guidance, and housing and vocational services from LMSW Lynn M. Borgogelli ("LMSW Borgogelli") at Spectrum Clinical Care Coordination.  AR at 874-76.

 Plaintiff receives mental health treatment including psychotherapy and medication management through Horizon Health Services ("Horizon Health") and the Horizon Health Bailey LaSalle Recovery Center, where Plaintiff sees psychiatrist Jeffrey Grace, M.D. ("Dr. Grace"), psychiatric nurse practitioner ("NP") Adrienne Roy ("NP Roy"), licensed mental health counselor ("LMHC") K. J. Dauscher ("LMHC Dauscher"), and licensed master social worker ("LMSW") Debra Deeble ("LMSW Deeble").  AR at 387-91, 544-46, 561-90, 616-44, 694-730, 775-94, 832-66, 1190-1606, 1635-1641, 1651-1807.

In connection with his disability benefits application, On October 3, 2016, Plaintiff underwent a psychiatric evaluation by psychologist Susan Santarpia, Ph.D. ("Dr. Santarpia").  AR at 497-500 ("Dr. Santarpia's opinion").  On October 12, 2016, non-examining State agency review psychologist D. Bruno, Psy.D. ("Dr. Bruno"), completed a Medically Determinable Impairments and Severity review implementing the SSA's psychiatric review technique ("PRT").  AR at 95-101, 111-14 ("Dr. Bruno's opinion").

On August 6, 2018, LMSW Borgogelli opined Plaintiff is not capable of employment.  AR at 875-76 ("LMSW Borgogelli's opinion").  On August 16 and 17, 2018, LMSW Deeble and NP Roy jointly completed a Mental Impairment Questionnaire. AR at 868-72 ("first Roy/Deeble assessment").  On November 18, 2020, LMSW Deeble

completed a Mental Residual Functional Capacity Questionnaire, co-signed by NP Roy

on April 5, 2021.  AR at 1637-1641 ("second Roy/Deeble assessment").  On April 6,

2021, Dr. Calabrese completed a Physical Treating Medical Source Statement.  AR at

1645-49 ("Dr. Calabrese's opinion").  Dr. Calabrese also completed for Erie County

Department of Social Services several forms for Medical Examination for Employability

Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination

including on December 8, 2016 (AR at 2189-90), January 17, 2018 (AR at 2195-96),

February 28, 2019 (AR at 2199-2200), February 19, 2020 (AR at 2207-08), and January

25, 2021 (AR at 2214-15).

## DISCUSSION

**1.     Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability

benefits when he is unable "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§

416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's

determination that a claimant is not disabled if the factual findings are not supported by

substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g),

1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In

reviewing a final decision of the SSA, a district court "is limited to determining whether

the SSA's conclusions were supported by substantial evidence in the record and were

based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir.

2012) (internal quotation marks and citation omitted).  "Substantial evidence is more

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*.  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence.  *Id*.  "Congress has instructed . . . that the factual findings of the Secretary,[4] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*."  *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original).  "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'"  *Id*. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

## 2.      Disability Determination

Plaintiff seeks disability benefits pursuant to both Title II (SSDI) and Title XVI (SSI) of the Act.  The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits.[5]  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

[5] Although the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title II, 42 U.S.C. § 423(d), and Title XVI, 42 U.S.C. § 1382c(a)(3), are identical, so that "decisions under these sections are cited interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's RFC which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the

national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920.

**3.   Analysis of Plaintiff's Arguments**

In the instant case, ALJ Georger found Plaintiff meets the insured status requirements for SSDI benefits through September 30, 2016, and has not engaged in substantial gainful activity ("SGA") since June 9, 2016, the date Plaintiff filed his disability benefits applications. AR at 883. The ALJ found Plaintiff suffers from the severe impairments of schizoaffective disorder, bipolar disorder, Type II diabetes with peripheral neuropathy, degenerative disc disease of the lumbar spine with radiculopathy, and obesity, *id*., but that Plaintiff's other impairments, including trigger finger of the left hand ring finger, hypertension, phimosis, and obstructive sleep apnea pose no more than a minimal impact on Plaintiff's ability to perform basic work activities and, as such, are not severe impairments, *id*. at 883-84, and that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 884-86.

Despite his impairments, the ALJ found Plaintiff retains the RFC to perform a limited range light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b), including the ability to occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds, occasionally balance, stoop, kneel, crouch, and crawl, can perform simple, routine, and repetitive tasks, make simple work-related decisions, and occasionally interact with co-workers, supervisors, and the general public.  AR at 887-94.  The ALJ further found Plaintiff is incapable of performing his PRW as a hand packager and assembler, *id*. at 894-95, but that based on Plaintiff's age on the alleged DOD of 49, which is defined as a younger individual, and which age category subsequently changed to closely approaching advanced age, and given Plaintiff's RFC, high school education, and ability to communicate in English, with transferability of skills irrelevant to the disability determination, there are jobs existing in significant numbers in the national economy that Plaintiff is capable of performing including as a mail clerk, price marker, and routing clerk.  *Id*. at 895-96.  Accordingly, the ALJ found Plaintiff was not disabled as defined in the Act since June 9, 2016, the alleged DOD, through the date of the second ALJ decision.  *Id*. at 896.

In support of his motion, Plaintiff argues ALJ Georger failed to abide by the Appeals Council's remand order because the same errors the Appeals Council identified in the first ALJ decision are repeated in the second ALJ decision, particularly that the ALJ failed to give the required consideration to Plaintiff's mental impairments, specifically the evidence of Plaintiff's auditory hallucinations, paranoia, and rigid posture, and also relied on Plaintiff's activities of daily living ("ADLs") to support a lesser degree of limitation, including obtaining his GED and taking college preparatory classes,

despite evidence that Plaintiff struggled with his GED classes and failed the test several times. Plaintiff's Memorandum at 7-10. In contrast, Defendant argues the second ALJ decision addresses the concerns raised by the Appeals Council and is supported by substantial evidence in the record, Defendant's Memorandum at 10-11, including that the ALJ fully and fairly considered Plaintiff's mental status findings, *id*. at 11-15, fully and fairly considered Plaintiff's activities during the relevant period, *id*. at 15-18, and appropriately weighed the opinions according to the regulations and the ALJ's conclusion is supported by substantial evidence in the record. *Id*. at 19-25. In reply, Plaintiff repeats his arguments that the ALJ erred by noting Plaintiff referenced "only 'one abnormal mental status examination' in November 2020 while under the care of NP Roy and LMSW Deeble," when the evidence shows continued abnormal findings of auditory hallucinations, paranoid thoughts, poor eye contact, negative, guarded and excessive mood, delusion, paranoid and preoccupied thinking, and impaired attention and concentration, Plaintiff's Reply at 1-2 (quoting AR at 892-93, and citing AR at 1386, 1393, 1400, 1420-21, 1435-36, 1414, 1427-28, 1502, 1535, and 1545). Plaintiff further maintains the ALJ failed to abide by the Appeals Council's direction that Plaintiff's ADLs not be considered as contradicting Plaintiff's allegations of disability. *Id*. at 2-3. There is no merit to Plaintiff's arguments.

Regarding Plaintiff's mental impairments, Plaintiff does not challenge the ALJ's determination that Plaintiff's schizoaffective disorder and bipolar disorder do not meet the criteria for disability based on a listed impairment. Plaintiff instead challenges the ALJ's RFC determination arguing the ALJ improperly referenced Plaintiff's obtaining his GED without considering Plaintiff failed the GED test several times before passing it,

dismissed LMSW Borgogelli's opinion that Plaintiff is not capable of employment without identifying any evidence that is inconsistent with such assessment, and characterized the records of mental status exams as largely unremarkable despite evidence of Plaintiff's auditory hallucinations, paranoia and rigid posture.  Plaintiff's Memorandum at 7-10 (quoting AR at 972).  The court addresses each of these argument in turn.

First, Plaintiff's argument that "the ALJ impermissibly framed the [Plainitff's] GED progress as entirely positive when formulating the RFC," Plaintiff's Memorandum at 8, overlooks several of ALJ Georger's observations.  In particular, the ALJ states Plaintiff "was ultimately able to get his GED during the period at issue after multiple attempts, and with extra help."  AR at 885 (referencing Plaintiff's testimony at the second hearing in which Plaintiff explained that because of a learning disability, he needed extra help to obtain his GED, AR at 932).  ALJ Georger specifically included Plaintiff's need for assistance in obtaining his GED and concluded Plaintiff has a "marked" limitation in understanding, remembering or applying information, AR at 885, which is one of the four domains the ALJ is required to assess when a Plaintiff claims disability based on a mental impairment.  *See* 20 C.F.R. Part 404, Subpt. P, Appendix 1, § 12.00.A.2.b.  The ALJ also considered Plaintiff's struggle to pass the GED in assessing Plaintiff with a "moderate" limitation in the domain of concentrating, persisting, or maintaining pace.  *Id*. at AR 886 (referencing 20 C.F.R. Part 404, Subpt. P, Appendix 1 § 12.00.A.2.c.  When formulating Plaintiff's RFC, the ALJ again observed that Plaintiff attended special education classes in high school and "ultimately obtained his GED during the period at issue here."  AR at 887.  Accordingly, there is no merit to Plaintiff's argument that ALJ

Georger considered Plaintiff's obtaining his GED to be "entirely positive," *see* Plaintiff's Memorandum at 8, when formulating Plaintiff's RFC.

Plaintiff also argues the second ALJ decision does not address the Appeals Council's criticism that in the first ALJ decision, ALJ Carr discredited LMSW Borgogelli's opinion that Plaintiff "is not physically capable of employment and mentally would not be able to handle to [*sic*] additional stress of a job" because Borogogelli, as a social worker, is not an acceptable medical source, and the assessment is not consistent with the record and Plaintiff's ADLs, yet failed to reference any specific evidence supporting this determination.  Plaintiff's Memorandum at 7-9.  A plain reading of the second ALJ decision establishes ALJ Georger properly considered LMSA Borgogelli's opinion.

In particular, in the first ALJ decision, ALJ Carr wrote "in August 2018, Lynn Borgogelli, a social worker, described the claimant as having debilitating back pain and opined that he [Plaintiff] is disabled and not physically capable of employment and would not be able to handle the stress of a job mentally."  AR at 30-31 (citing AR at 875-76).  ALJ Carr discounted this assessment because it was not made by an acceptable medical source, and is not consistent with the record and Plaintiff's ADLs, *id*., but ALJ Carr did not reference any evidence supporting this determination.  In the second ALJ decision, ALJ Georger discounted MSLW Borgogelli's opinion because "it is a conclusory opinion that infringes on the ultimate determination of disability, which is reserved to the Commissioner, and is accorded limited weight."  AR at 892.  As Defendant argues, Defendant's Memorandum at 23-24, the statement in LMSW Borgogelli's opinion, which is written in letter form, that Plaintiff would not be able to handle the stress of a job, is the only portion that can be construed as an actual opinion.

The balance of Borgogelli's opinion, including comments that Plaintiff "had difficulty reading," and "continues to hear voices," does not address the severity of Plaintiff's mental health condition or his limitations.  LMSW Borgogelli's opinion that Plaintiff is physically incapable of employment and cannot handle the stress of a job does not assess Plaintiff with any particular functional limitations, which is consistent with the fact that there are no treatment notes by LMSW Borgogelli, the absence of which is further consistent with LMSW Borgogelli's statement that she assisted Plaintiff with scheduling medical appointments, medication management, peer supports, and financial guidance in addition to housing and vocational services.  AR at 875.  Nor did the ALJ's discounting of LMSW Borgogelli's opinion violate the so-called "treating physician's rule" applicable to disability benefits claims filed, like the instant claim, prior to March 27, 2017, and pursuant to which  an opinion from a treating medical source is entitled to controlling weight so long as the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record...."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  *See Camille v. Colvin*, 652 Fed.Appx. 25, 28 (2d Cir. 2016) ("'[T]he opinion of a treating physician is not binding if it is contradicted by substantial evidence, and the report of a consultative physician may constitute such evidence.'" (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983))).  Nevertheless, the treating physician's rule does not apply to Borgogelli, a licensed social worker.  *See Drysdale v. Colvin*, No. 14-CV-1722, 2015 WL 3776382, at *4 (S.D.N.Y. June 16, 2015) ("Licensed clinical social workers are not 'acceptable medical sources' due controlling weight under

the treating physician rule."). Further, although "the ALJ is certainly free to consider the opinion of [other medical sources] in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician." *Genier v. Astrue,* 298 Fed.Appx. 105, 108 (2d Cir. 2008). Moreover, as the ALJ observed, AR at 892, LMSW Borgogelli's unsupported and conclusory opinion that Plaintiff is disabled encroaches on the ALJ's role in making the ultimate determination as to whether Plaintiff is disabled. *See Taylor v. Barnhart*, 83 Fed.Appx. 347, 349 (2d Cir. 2003) ("[T]he ultimate issue of disability is reserved for the Commissioner."). Accordingly, there is no merit to Plaintiff's claim regarding ALJ Georger's discrediting LMSW Borgogelli's opinion.

Nor is there any merit to Plaintiff's argument that ALJ Georger mischaracterized the records of mental status exams as largely unremarkable despite evidence of Plaintiff's auditory hallucinations, paranoia and rigid posture. Plaintiff's Memorandum at 9-10. To the contrary, a careful reading of the second ALJ decision establishes ALJ Georger considered and properly weighed all opinions and assessments in the record.

It is the ALJ, and not a medical source, who is responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 404.1527(d)(2), 416.946(c), and 416.927(d)(2). In formulating an RFC, "the ALJ is 'entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'" *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (quoting *Matta v. Astrue*, 508 Fed.Appx. 53, 56 (2d Cir. 2013) (brackets in *Schillo*)). The ALJ is permitted to formulate the RFC without regard to any particular medical opinion provided the record as a whole contains sufficient evidence from which the claimant's RFC can be determined. *See Cook v.*

*Comm'r of Soc. Sec.,* 818 Fed.Appx. 108, 109-10 (2d Cir. 2020) ("[A]lthough there was

no medical opinion providing the specific restrictions reflected in the ALJ's RFC

determination, such evidence is not required when 'the record contains sufficient

evidence from which an ALJ can assess the [claimant's] residual functional capacity.'"

(quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 Fed.Appx. 29, 34 (2d Cir. 2013)).  As

such, so long as the evidence in the administrative record, including diagnostic

evidence, MRI results, X-ray results, and treatment notes support the ALJ's RFC

determination, it cannot be said that "no reasonable factfinder could have reached the

same conclusion," so as to uphold an RFC assessment upon judicial review.  *Schillo*, 31

F.4th at 78 (citing *Brault*, 683 F.3d at 448).  Here, ALJ Georger properly considered all

the evidence in the record, including opinion evidence and treatment records and notes,

as well as Plaintiff's perceptual disturbances and auditory hallucinations in formulating

Plaintiff's RFC.

Regarding opinion evidence, the ALJ considered the March 22, 2016 joint

opinion of Dr. Grace, Plaintiff's treating psychiatrist, and LMHC Dauscher who listed

Plaintiff's mental health diagnoses as schizoaffective disorder, moderate alcohol use,

with academic/social environment problems possibly contributing factors.  AR at 890

(citing AR at 362-65, 388-91).  Dr. Grace and LMHC Dauscher checked boxes

indicating Plaintiff's symptoms included anhedonia, decreased energy, feelings of guilt

or worthlessness, mood disturbance, recurrent and intrusive recollections of a traumatic

experience which are a source of marked distress, persistent disturbances of mood or

affect, apprehensive expectation, paranoid thinking or inappropriate suspiciousness,

emotional withdrawal or isolation, hallucinations or delusions, vigilance and scanning,

sleep disturbance, and history of physical symptoms of several years duration beginning before age 30 and requiring Plaintiff to frequently take medication, see a physician often, and significantly alter life patterns. AR at 363, 389. Dr. Grace and LMHC Dauscher also checked boxes pertaining to Plaintiff's mental functional limitations indicating Plaintiff, despite his mental health symptoms, is moderately limited with regard to ADLs, maintaining social functioning, and concentration, persistence or pace, but had not experienced any episodes of decompensation within a 12-month period each of at least two weeks duration. *Id*. at 364, 390. ALJ Georger gave these findings "some" weight because they are "generally consistent with the evidence from the period at issue, but predate[ ] the claimant's alleged onset by about six months." *Id*. at 890 (brackets added). The ALJ gave the additional finding that Plaintiff's mental impairments or treatment would cause him to miss more than four days of work each month, *id*. at 365, 391, only "minimal" weight because it is speculative and not consistent with the opinion's otherwise moderate findings. *Id*. at 890. Individual progress notes following Dr. Grace and LMHC Dauscher's opinion are consistent with the weight ALJ Georger afforded this opinion. *See*, *e.g.*, AR at AR 586-87 (January 17, 2017 Mental Status Exam completed for Horizon Health showing all areas assessed were normal except for depressed mood, but no auditory hallucinations, and Plaintiff's insight and judgment were fair); 567-68 (March 14, 2017 Mental Status Exam completed for Horizon Health was essentially normal with regard to appearance, hygiene and grooming, eye contact, posture, activity, attitude, affect, speech rate, tone, quantity and quality, oriented as to person, place, and time, with appropriate thought content, logical thought process, and good insight and judgment, with auditory

hallucinations the only remarkable finding); 626-27 (June 7, 2017 Horizon Health

Individual Progress Note indicating no change and stable/baseline since last session,

with Plaintiff presenting on time and adequately groomed, alert, oriented, with

depressed mood and congruent affect but cooperative, polite and pleasant, making fair

eye contact, sitting with rigid posture, reporting helping his mother with rehab which has

been a source of stress, praying and speaking with his pastor, attending GED classes

three to four times a week, reported dealing with the loss of his aunt and a family

friend); and 1555-56 (August 25, 2020 Horizon Health Service Note reporting Plaintiff

does not know anyone who had COVID-19, yet he stays inside watching television and

is a bit bored, but that staying inside decreases the auditory hallucinations which only

bother him when he goes to the grocery store or pharmacy, his mood is somewhat

depressed, he stopped going to his college prep classes because of the virus, prays a

lot).  These more recent treatment and progress notes are consistent with the weight

ALJ Georger gave the March 22, 2016 joint opinion of Dr. Grace and LMHC Dauscher.

 Nor was ALJ Georger's grant of "some" weight to the first and second

Roy/Deeble assessments inconsistent with the record as a whole.  In the first August

16-17, 2018 Roy/Deeble assessment, Plaintiff was reported as markedly limited in the

domains of understanding, remembering or applying information, and concentrating,

persisting, or maintaining pace, and moderately limited in the domains of interacting

with others, and adapting or managing oneself.  AR at 870.  Out of 22 separate mental

abilities and aptitudes required for unskilled work, boxes were checked indicating

Plaintiff could only occasionally perform 14 and frequently or constantly engage in the

remaining eight.  AR at 871.  Plaintiff's mental impairments and treatment were

expected to cause Plaintiff to miss work more than four days per month, *id.* at 871, and Plaintiff's Global Assessment of Functioning ("GAF") score[6] was 60, indicating moderate symptoms or moderate difficulty in social, occupational or school functioning.  The ALJ granted this assessment some weight because the GAF score, which was only one point below a finding for mild symptoms or difficulties, *i.e.*, 61, was not consistent with any marked finding, and nothing in the record supported Plaintiff would be absent from work four or more times per month.  AR at 892.  The ALJ continued that the finding that Plaintiff is moderately but not markedly limited in concentrating, persisting and maintaining pace is consistent with Plaintiff's ultimately obtaining his GED, and his abilities to maintain a driver's license, shop, use the internet for an hour a day, and follow the plot of a movie or television show, but the balance of the assessment is generally supported by the treatment record including Plaintiff's marked limitation in understanding, remembering, and applying information which the ALJ asserted he addressed by limiting Plaintiff to simple, routine work with few decisions and only occasional interactions with others.  *Id*.

In the second (November 18, 2020 and April 5, 2021) Roy/Deeble assessment, Plaintiff was reported as unable to meet competitive standards for mental abilities and aptitudes needed to do semiskilled and skilled work in the categories of understanding

---

[6] "The GAF is a scale promulgated by the American Psychiatric Association to assist 'in tracking the clinical progress of individuals [with psychological problems] in global terms.'"  *Kohler v. Astrue*, 546 F.3d 260, 262 (2d Cir. 2008) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed.2000)).  "A GAF between 51 and 60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers).'"  *Id.* at 34.

and remembering detailed instructions, carrying out detailed instructions, setting realistic goals or making plans independently of others, and dealing with stress of semiskilled and skilled work.  AR at 1640.  For the mental abilities and aptitudes needed to do particular types of jobs, however, Plaintiff's abilities were assessed as unlimited or very good in the categories of adhering to basic standards of neatness and cleanliness, and using public transportation, and as limited but satisfactory with regard to interacting appropriately with the general public, maintaining socially appropriate behavior, and traveling in unfamiliar places.  *Id*. at 1640.  Plaintiff's GAF was assessed at 50, indicating "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)," Am. Psychiatric Ass'n, *DSM-IV-TR* at 34, *id*. at 868, with Plaintiff again anticipated to miss more than four days of work each month because of his mental health impairment symptoms and treatment.  *Id*. at 871.  After acknowledging the second Roy/Deeble assessment was much more restrictive than the first Roy/Deeble assessment, ALJ Georger gave it little weight because the corresponding treatment records showed Plaintiff with a dysthymic (mildly depressed) mood, but Plaintiff was objectively observed with a cooperative and pleasant attitude, normal speech, no perceptual disturbances, intact concentration and attention. AR at 892-93.   Following the second Roy/Deeble assessment, Plaintiff's mental health status was repeatedly noted as stable.  *Id*. at 893.

ALJ Georger gave little weight to the opinions of Dr. Santarpia and Dr. Bruno, both of whom assessed Plaintiff with fewer limitations than the ALJ's RFC.  On October 3, 2016, Dr. Santarpia reported that when queried, Plaintiff attributed his inability to work

to problems with his "lower back and left leg," rather than to any mental health impairment.  AR at 497.  Upon evaluating Plaintiff, Dr. Santarpia opined Plaintiff is able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention, concentration, and a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others, and appropriately deal with stress within normal limits, concluding that the results of the evaluation were consistent with Plaintiff's psychiatric problems and substance abuse history, but do not "appear significant enough to interfere with the claimant's ability to function on a daily basis."  AR at 499-500.  On October 12, 2016, Dr. Bruno reviewed Plaintiff's medical records, diagnosed Plaintiff with affective disorders, but concluded Plaintiff had no limitations in any of the four domains of mental functioning.  AR at 100.  In affording the opinions of Drs. Santarpia and Bruno little weight, the ALJ stated the record as a whole "shows objective limits that justify mental erosions to the residual functional capacity," AR at 891, which is consistent with the ALJ's formulation of an RFC more limited than that supported by the opinions of Drs. Santarpia and Bruno.

ALJ Georger also balanced the various opinions from Plaintiff's mental health treatment providers with Plaintiff's ADLs which included obtaining his GED, attending church and a bible study group, watching television and movies, using the internet, and spending time with family and friends.  AR at 886, 892-93.  Nor did the ALJ fail to consider Plaintiff's reports of auditory hallucinations and paranoia as Plaintiff argues.  Plaintiff's Memorandum at 9.  Rather, the ALJ considered Plaintiff's "feelings of paranoia, dread, and lack of personal safety in crowds," AR at 885, as well as that

Plaintiff's panic attacks were triggered by grief and his mental status examinations show Plaintiff's mood fluctuating between euthymic and depressed, AR at 886, and specifically recognized that Plaintiff has auditory hallucinations, *id*. at 887, including "seeing smoke and shadows in [his] apartment," *id*. at 889, but that according to Dr. Grace, Plaintiff's treating psychiatrist, Plaintiff "reported auditory hallucinations that he was able to ignore. . . . ." *Id*.  The ALJ also observed that at other mental status examinations with Horizon Health, Plaintiff inconsistently denied perceptual disturbances, reported hearing "negative voices" on a daily basis, denied hearing voices, and "described his auditory hallucinations as 'very minor.'"  AR at 890 (citing AR at 616-44, 694-730, 842, 1555-56).  The ALJ also considered that Plaintiff's August 25, 2020 self-reported increase in socialization and cognitive skills, including starting a new relationship and engaging in college readiness classes suggested an improvement in concentration and paranoia with adequate medication management.  AR at 890 (citing AR at 1555-56).  *See Whipple v. Astrue*, 479 Fed.Appx. 367, 370 (2d Cir. 2012) (affirming ALJ's decision that claimant was not disabled in part because his "depression and anxiety were manageable with medication").  There is thus no merit to Plaintiff's argument that ALJ Georger failed to properly weigh the opinion evidence of record.

To summarize, in the instant case, the evidence in the record establishes at most that it is susceptible to more than one rational interpretation, including the ALJ's Decision that Plaintiff is not disabled under the Act.  *See McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."); *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 58-59 (2d Cir. 2013) ("Under this 'very deferential standard of

review [applicable to actions challenging an administrative decision on a disability benefits claim],' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).  Further, the Supreme Court recently reaffirmed that the threshold for substantial evidence "is not high . . . .  It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. __; 139 S.Ct. 1148, 1154 (2019) (internal citation and quotation marks omitted).  Indeed, as noted, see Discussion, *supra*, at 7, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*." *Bonet*, 523 Fed.Appx. at 59 (quoting *Brault*, 683 F.3d at 448) (italics in original).  In the instant case, the ALJ's decision that Plaintiff could perform a limited range of light work such that Plaintiff was not disabled is supported by substantial evidence in the record.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 10) is DENIED; Defendant's Motion (Dkt. 11) is GRANTED; the Clerk of Court is DIRECTED to CLOSE the file. SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      March 12, 2024
               Buffalo, New York